

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Shontae D. Gray*
*Assistant Untied States Attorney*

*970 Broad Street, 7ʰ floor*
*Newark, New Jersey 07102*

*Direct Dial: 973-297-2071*

January 7, 2022

**Via ECF**
The Honorable Brian R. Martinotti
United States District Judge
U.S. Post Office & Courthouse
2 Federal Square
Newark, New Jersey 07102

> Re:　*United States v. Robert "Chuck" Frei*
> 　　　Crim. No. 21-22

Dear Judge Martinotti:

The Government submits this letter to oppose Robert Frei's ("Frei") request for early termination of supervised release.

## Background

On February 5, 2019, in the Southern District of New York, Frei pled guilty to a three-count Information, which charged him with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343 (Count One), wire fraud, in violation of 18 U.S.C. § 1343 (Count Two), and effecting the entry of falsely valued goods, in violation of 18 U.S.C. § 541. *See* ECF No. 1, Crim. No. 18-822.

On September 21, 2020, Frei was sentenced to time served. *See* ECF No. 16, Crim. No. 18-822. Frei was also sentenced to a three-year term of supervised release, which included the standard supervision conditions as, well as special conditions requiring Frei to provide probation with access to requested financial information, new-debt restrictions, compliance with Frei's cooperation agreement and supervision in his district of residence. *Id.* Frei was also ordered to pay restitution in the amount of $1,412,122. *Id.*

Frei's supervision commenced on or about September 21, 2020 and was transferred to the District of New Jersey. *See* ECF No. 3. According to Probation, Frei has complied with all conditions of probation and has satisfied all of his

financial obligations.  Due to his level of compliance, Frei was transferred to this District's Low Intensity Caseload on or about November 17, 2020.  To date, Frei has completed approximately 15 months of his 36-month term of supervised release, which is scheduled to expire on or about September 20, 2023.

In Frei's request for early termination of supervised release, he argues that early termination is appropriate because he has no prior criminal history, is gainfully employed, has complied with the requirements of supervised release, and does not require probation's assistance to reintegrate into society.  ECF No. 4 at 1.

The Government opposes Frei's motion for early termination of supervised release.  For the reasons set forth below, his motion should be denied.

## Analysis

Under 18 U.S.C. § 3583(e), this Court may terminate a term of supervised release prior to its expiration.  The statute provides, in relevant part:

> The court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1).

It is Frei's burden, "as the party receiving the benefit of early termination, to demonstrate that such a course of action is justified." *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006).  After all, it "logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence." *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989).  In assessing whether Frei has met that burden, this Court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

(3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);

(4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

(6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

"After considering these factors, this Court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." *United States v. Melvin,* 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3583(e)(1)). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* (quotation marks omitted). Furthermore, "[d]istrict courts are not required to make specific findings of fact with respect to each of these" specified § 3553(a) "factors; rather, a statement that [the district court] has considered the statutory factors is sufficient." *Id.* at 52-53.

Repudiating contrary language in earlier non-precedential opinions, however, *Melvin* held that "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Id.* at 53. Although "extraordinary circumstances may be *sufficient* to justify early termination of a term of supervised release," they are not "*necessary* for such termination." *Id.* (emphasis in original). Nonetheless, "*[g]enerally,* early termination of supervised release under § 3583(e)(1) will be proper" as a discretionary matter "only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it." *Id.* (emphasis in original) (quotation marks omitted). "That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced," as § 3553(a) requires, a reviewing court "would expect that something will have changed in the interim that would justify an early end to a term of supervised release." *Id.* (quotation omitted).

Here, taking into consideration the Section 3553(a) factors, Frei's conduct, and the interests of justice, early termination of supervised release is not warranted. First, although Frei had no prior criminal history, the nature and circumstances of this offense militate against early termination. *See* 18 U.S.C. § 3553(a)(1)-(2). From 2007 through 2013, as the chief financial officer of

Stargate, a children's clothing company, Frei and his co-conspirators participated in two schemes to evade customs duties on goods imported by Stargate from China. The first scheme, which spanned from 2007 to 2010, was a double-invoicing scheme pursuant to which Stargate would receive two sets of invoices for the same shipment of goods. *See* Presentence Investigation Report ("PSR") ¶ 10. The first invoice, referred to as the "pay by" invoice, was significantly higher and reflected the actual price Stargate paid for the goods. *Id.* The second invoice purported to identify "samples" which were purchased by Stargate and reflected a significantly lower price for the goods. *Id.* The "samples" invoice was submitted to U.S. Customs and Border Protection ("CPB"). *Id.* This allowed Stargate to pay a fraudulently lower amount of customs duties. *Id.* Frei would review both sets of invoices and enter the amount of the higher invoice into Stargate's books, understanding that the purpose was to evade customs duties. *Id.*

In 2010, Frei and his co-conspirators began a new variation of the scheme, involving invoices for "sample" goods, by which the manufacture would send two separate sets of invoices for a given shipment that together reflected the true price Stargate actually paid for a particular shipment of goods. PSR ¶ 11. The first invoice, typically entitled the "commercial invoice," described the goods purchased and was submitted to CBP. *Id.* The second invoice purportedly reflected amounts paid by Stargate for "sample" goods and was not submitted to CBP. *Id.* Sample goods are not subject to customs duties. *Id.* However, the "samples" invoice was not for samples actually purchased by Stargate. PSR ¶ 12. On their face, the "samples" invoices were not plausible. Among other things, these invoices reflected per unit prices that were wildly unrealistic (*e.g.*, $70 to $90 dollars per unit on the samples invoice versus a $4 per unit price on the commercial invoice). *Id.* Because sample goods are not subject to duty, the "samples" invoices were a means to make an additional payment to the manufacturer for the goods purchased without disclosing it to CBP. *Id.* Frei's co-conspirators continued this scheme even after he was fired in 2013.

Although Frei did not have a leadership role in this offense (PSR ¶ 14), this was not a one-off lapse in judgment. Indeed, Frei participated in these schemes for approximately six years and was responsible for uncollected duties in the amount of $1,412,122. The seriousness of this offense and the nature and circumstances of Frei's conduct weigh against his request for early termination of supervised release.

Second, the sentence pronounced, including the term of supervised release, serves the need to afford adequate deterrence to criminal conduct by other potential offenders. *See* 18 U.S.C. § § 3553(a)(2)(B). Would-be financial fraudsters must be sent a message that their conduct will not be tolerated, that they cannot simply pay a fine or restitution to compensate for their crimes, and that they will be punished appropriately.

- 4 -

Third, the sentence pronounced provides Frei with necessary correctional treatment, specifically regarding financial transparency and new-debt restrictions, in the most effective manner. *See* 18 U.S.C. § § 3553 (a)(2)(D). Frei acknowledged in his sentencing submission that it was familial financial pressure and fear of being fired during an economic downturn that caused him to participate in illegal activity over the span of six years. *See* ECF No. 13, Crim. No. 18-822. Although, Frei has complied with the financial obligations required of him and paid approximately $1.4 million in restitution, serving the remainder of the term of supervised release would serve both Frei and the interests of justice in ensuring that if he were to encounter possible financial hardship in the future, he will think twice before succumbing to any alleged pressure to commit financial crimes.

Lastly, Frei notes that he cooperated with the Government and that a Rule 5k1.1 motion was filed on his behalf. Based on his cooperation, Frei was sentenced to time served after, having spent one day incarcerated,[1] which was far below the applicable guidelines range of 27 to 33 months. PSR ¶ 77. That sentence included a 3-year term of supervised release. *See* ECF No. 16. As the Circuit recently explained in *Melvin*, early termination of supervised release is *generally* proper only where new or unforeseen circumstances warrant it, "because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release." *Melvin*, 978 F.3d at 53. Here, Frei does not present any new or unforeseen circumstances. He also received a sentence below the guidelines and has served less than half his term of supervised release, which weighs against early termination.

Although Frei's ability to obtain gainful employment and to pay approximately $1.4 million in restitution in a 15-month period is laudable, the 3-year period of supervised release and compliance with its conditions is part of his sentence, it remains incomplete, and there are still substantial reasons to continue his term of supervised release, as explained above, and his motion should be denied

---

[1] According to the PSR, Frei voluntarily surrendered on November 13, 2018 and was released on his own recognizance the same day.

## **Conclusion**

For the reasons set forth above, the United States submits that early termination of Frei's term of supervised release is not "warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

*/s/ Shontae D. Gray*___
By: Shontae D. Gray
Assistant U.S. Attorney

cc:     Avraham C. Moskowitz, Esq.